**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SCOTT C. DOREY, | |
| Plaintiff, | |
| v. | Case No. ___17-cv-8674___ |
| LARBY S. AMIROUCHE and RYAN EAGLE, | Hon. _____ |
| Defendants. | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Scott C. Dorey ("Dorey"), by and through his undersigned counsel, files this complaint against Larby S. Amirouche ("Amirouche") and Ryan Eagle ("Eagle") (together "Defendants") and in support alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for defamation, intentional infliction of emotional distress, and violation of the Computer Fraud and Abuse Act, 18. U.S.C. § 1030, *et seq*. ("CFAA"). These claims arise out of an intentional and malicious crusade by Defendants Larby S. Amirouche and Ryan Eagle to defame Plaintiff Scott C. Dorey and to damage his reputation within his personal and professional community by falsely accusing him of committing various crimes, stealing intellectual property, and hiring foreign governments to hack into Defendants' computers.

2.      Defendants disseminated their false and defamatory statements to Dorey's business contacts, news outlets, and to the general public via Twitter and Facebook. On information and belief, and in an effort to further disseminate and promote false and defamatory statements about Dorey, Defendants improperly accessed Dorey's personal and business contacts from his personal

1

computer and/or cell phone, without Dorey's knowledge or approval, and established false Facebook pages in Dorey's name without Dorey's knowledge or consent. Defendants' actions were extreme and outrageous, and were intended to and did inflict severe emotional distress on Dorey.

3.      By this action, Dorey seeks compensatory and punitive damages resulting from injuries to his good name, reputation, and business as a result of Defendants' defamatory statements. Dorey also seeks statutory damages under the CFAA and compensatory and punitive damages for the injuries Dorey has suffered as a result of Defendants' extreme and outrageous conduct.

## PARTIES

4.      Plaintiff Scott C. Dorey is a Canadian citizen and resides in Vancouver, Canada.

5.      Defendant Larby S. Amirouche is a citizen of the state of Illinois and resides in this judicial district.

6.      Defendant Ryan Eagle is a citizen of the state of Illinois and resides in this judicial district.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over Dorey's claims pursuant to 28 U.S.C. § 1332(a)(2), as the matter in controversy exceeds $75,000, exclusive of interests and costs, and it is between citizens of a state and a subject of a foreign state.

8.      In addition, this Court has federal question jurisdiction of this action under 28 U.S.C. § 1331 because this action alleges violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

9.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendants are residents of this judicial district, and the events giving rise to the claims set forth herein occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

**A.     Scott Dorey is a Well-Respected and Reputable Investment Manager.**

10.     Dorey is an independent business person with significant experience in investment banking, mergers and acquisitions, and principal transactions.

11.     Dorey is the former Chairman and Co-Chief Executive Officer of BHP International Markets, Ltd., a privately-owned investment firm.  Prior to his tenure at BHP, Dorey spent several years at Lehman Brothers in New York and in London, first as an investment banker focusing on advising telecom and media companies, and later as a Senior Advisor in the Office of the Chairman/Vice Chairman and member of its New Products and Risk Committees and the New York Federal Reserve Counterparty Risk Management Policy Group.

12.     Dorey is also qualified as an Attorney in New York and as a Barrister and Solicitor in Alberta, Canada. He received his law degree from King's College London, in the United Kingdom.  He has experience as a corporate lawyer at Paul Weiss Rifkind Wharton and Garrison in New York, were he focused on global mergers and acquisitions.

13.     His prior board affiliations include the March of Dimes, the Institute of International Education (which administers the Fulbright Scholarship Program and the Scholar Rescue Fund), and the NYU Downtown Hospital.

**B.** **In Exchange for Funding from Darby, Amirouche Agreed to a Create Computer Code and Develop an Online Sales Program for the Marketing and Sale of an LED Flashlight.**

14.     In or around May 2016, Dorey became interested in a new business venture concerning the marketing and sale of a LED flashlight.

15.     Through a mutual business connection, Dorey was introduced to Amirouche as a computer code developer and online sales expert.

16.     After meeting Amirouche, Dorey agreed to fund Amirouche's writing of the computer code and the development of the online sales program in or around May of 2016.

17.     Over the ensuing months, and based on Amirouche's representations, Dorey paid Amirouche approximately $800,000 to complete the project.

**C.** **Amirouche Fails to Produce the Computer Code as Promised.**

18.     Although Amirouche represented to Dorey that the project would take only a few months to complete, Amirouche never produced a working code or online sales program.  Instead, Amirouche provided only a series of excuses for the delay and repeatedly requested additional money that he claimed was needed to complete the project.

19.     By August 2016, Dorey grew concerned about Amirouche's ability to produce the product as promised.  As a result, Dorey hired an independent consultant to obtain, review, and assess Amirouche's work (with Amirouche's permission) on the computer code and online sales program. The consultant promptly concluded that Amirouche's work was nothing more than a 24-hour project that had no prospect of working as Amirouche had promised.

20.     As a result, in or around the September 2016, Dorey informed Amirouche that he would no longer continue to fund the project.

**D.** **Defendants Engage in a Campaign to Defame Dorey By Falsely Accusing Him of Stealing Intellectual Property, Hiring Foreign Governments to Hack Their Computers, and Committing Various Crimes.**

21. Starting in or around November 2016, Defendants set out on a mission to spread false and defamatory statements about Dorey and his colleagues and to extort additional money from Dorey.

22. Those false statements were intended to harm Dorey's reputation by indicating that Dorey had committed criminal activity, and/or is incompetent in his job, trade, or profession.

23. For example, Amirouche and Eagle have engaged in the following acts:

a. **November 30, 2016**: Amirouche emailed the Chairman and numerous employees of Hanergy, a multinational renewable energy company located in Beijing, China, falsely accusing Dorey of trying to "steal" Amirouche's alleged company, DMM1, LLC ("DMM1"), from him. Amirouche further falsely accused Dorey of "ruin[ing] the lives of many people in [China] and through collateralized debt obligations backed by Gold and rigged games at Lehman Brothers stole $50 [million or more] a pop in [US dollars]."

b. **January 13-14, 2017**: Amirouche emailed numerous business contacts of Dorey and news outlets to falsely accuse Dorey of stealing intellectual property from DMM1, "tampering with [DMM1's] employees," and "launch[ing] a coup" with BHP's then Chairman and Chief Executive Officer, Matt Argall. Amirouche also stated that "Dorey should be charged with Conspiracy to Torture" and refers to Dorey as a "monster" and a "pathological liar."

c. **January 15, 2017**: Amirouche emailed officials at the Securities and Exchange Commission and numerous BHP employees, once again falsely accusing Dorey of (i) stealing intellectual property from DMM1, (ii) "tamper[ing] with the employees,"

(iii) torturing him, and (iv) "launch[ing] a coup." The email also states that Dorey is a "thief[] and a pathological liar," and a "criminal."

d. **May 4, 2017**: Amirouche posted an article on the web site blackhatworld.com titled "Scott C. Dorey Lost All of My Family's Wealth" in which Amirouche falsely stated that Dorey "st[ole] everything [Amirouche] had," including Amirouche's business and his lifetime savings. Amirouche also falsely stated that Dorey ran a "ponzi scheme" and stated that Dorey was a "dangerous psychopath with no conscience."

e. **May 8, 2017**: Amirouche posted an article on the web site www.scamguard.com titled "Scott C Dorey Stole Business Intellectual Property" in which Amirouche falsely stated that Dorey stole his "information and intellectual property" and "t[ook] people's money under false pretenses." The post also falsely stated that Dorey is a "dangerous psychopath with no conscience" and a "professional criminal."

f. **May 19, 2017**: Amirouche emailed Dorey, Matt Argall, and other third parties, falsely accusing Dorey of "[c]onspir[ing] and [breaking] a lot of laws," and stating that Dorey is "a maniac and out of control." Amirouche demanded that Dorey pay him $500 million, or else he would serve him with "important legal notices."

g. **May 24, 2017**: Amirouche posted on Twitter that he wished for "Scott Dorey and Matt Argall [] to share a cell."

h. **May 2017 to July 2017**: On May 17, 2017, Eagle posted a video on his Twitter account in which he stated that he and Amirouche intended to file a demand for $500 million dollars from Dorey and BHP. Eagle stated that he was going to "be in contact with BHP, and . . . blow[] that company's reputation up until they give me everything that

I need." Around the same time, Eagle and Amirouche posted another Twitter video in which Eagle accused Dorey of hiring hackers in Russia and China to break into Eagle's and Amirouche's personal and business computers. In a third Twitter video, also featuring both Eagle and Amirouche, Eagle purported to give a list of individuals that he and Amirouche were going to "take the most money from." Amirouche then proclaimed that "every single person on [the] list can actually be charged with the same crime. They are all implicated in the same conspiracy."

i. **August 12, 2017**: Amirouche sent an email to third-parties in which he falsely claimed that [DMM1's] "business was sabotaged by our investor Scott Dorey" and that Dorey has a "Severe Borderline Personality Disorder."

24. Throughout the above-described events, Amirouche and Ryan continually threatened and harassed Dorey by demanding exorbitant sums of money. In one such demand on September 21, 2017, Amirouche and Ryan demanded $1.9 billion dollars.

25. On information and belief, Defendants improperly accessed Dorey's computer and/or cell phone, without his knowledge or authorization, for the purpose of obtaining Dorey's personal and business contacts. Defendants then composed multiple emails to those contacts defaming Dorey, as described above.

26. On information and belief, Defendants also created fake Facebook and Twitter accounts in Dorey's name and disseminated false and defamatory statements from those fake accounts.

## COUNT I
### DEFAMATION *PER SE*
### AGAINST DEFENDANT LARBY ARMIOUCHE

27. Dorey realleges and incorporates paragraphs 1 through 26 above as though set forth

fully herein.

28. As detailed above, Amirouche maliciously and without privilege made false statements of fact to third parties about Dorey.

29. Many of these false statements, including statements accusing Dorey of having "Severe Borderline Personality Disorder," "[c]onspiring and [breaking] a lot of laws," stealing intellectual property, causing foreign governments to hack Defendants' computers, and stealing money while at Lehman Brothers, caused Dorey devastating reputation damages within his professional and personal community.

30. All of the statements are false and Amirouche knew they were false or acted with reckless disregard to their truth. The statements were made maliciously and without any privilege.

31. All of the statements have caused Dorey serious emotional and financial harm.

32. The statements constitute defamation *per se* because they falsely accused Dorey of criminal activity, prejudiced Dorey in his business and profession, imputed a lack of ability in Dorey to perform his employment, profession, and business, and imputed a want of integrity to Dorey in the performance of his employment, profession, and business.

33. As a result of Amirouche's false and defamatory statements, Dorey suffered, and continues to suffer serious emotional harm and injuries to his business and reputation that are in excess of the $75,000 jurisdictional amount, exclusive of interest and costs.

34. Because of the willful and malicious nature of the above-described conduct, the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff Scott Dorey respectfully requests the following relief:

    a. Enter judgment in favor of Dorey on Count I of this Complaint;

    b. Award Dorey all compensatory damages resulting from injuries to his good name, reputation, and business as a result of Amirouche's defamatory statements;

c.      Award Dorey compensatory damages for the humiliation and emotional distress he has suffered and continues to suffer as a result of Amirouche's defamatory statements;

d.      Award Dorey punitive damages because of the malicious nature in which the defamatory statements were made;

e.      Order that Amirouche take all actions necessary to remove material relating or referring to Scott Dorey that he or anyone acting on his behalf has posted on any internet website;

f.      Award Dorey statutory pre-judgment interest; and

g.      Order all further relief that the Court deems just and proper.

## COUNT II
## DEFAMATION *PER SE*
## AGAINST DEFENDANT RYAN EAGLE

35.      Dorey realleges and incorporates paragraphs 1 through 26 above as though set forth fully herein.

36.      As detailed above, Eagle maliciously and without privilege made false statements of fact to third parties about Dorey.

37.      Many of these false statements, including statements accusing Dorey of causing foreign governments to hack Defendants' computers and committing crimes caused Dorey devastating reputation damages within his professional and personal community.

38.      All of the statements are false and Eagle knew they were false or acted with reckless disregard to their truth. The statements were made maliciously and without any privilege.

39.      All of the statements have caused Dorey serious emotional and financial harm.

40.      The statements constitute defamation *per se* because they falsely accused Dorey of criminal activity, prejudiced Dorey in his business and profession, imputed a lack of ability in Dorey to perform his employment, profession, and business, and imputed a want of integrity to Dorey in the performance of his employment, profession, and business.

41.     As a result of Eagle's false and defamatory statements, Dorey suffered, and continued to suffer serious emotional harm and injuries to his business and reputation that are in excess of the $75,000 jurisdictional amount, exclusive of interest and costs.

42.     Because of the willful and malicious nature of the above-described conduct, the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff Scott Dorey respectfully requests the following relief:

a.     Enter judgment in favor of Dorey on Count II of this Complaint;

b.     Award Dorey all compensatory damages resulting from injuries to his good name, reputation, and business as a result of Eagle's defamatory statements;

c.     Award Dorey compensatory damages for the humiliation and emotional distress he has suffered and continues to suffer as a result of Eagle's defamatory statements;

d.     Award Dorey punitive damages because of the malicious nature in which the defamatory statements were made;

e.     Order that Eagle take all actions necessary to remove any material relating or referring to Scott Dorey that he or anyone acting on his behalf has posted on any internet website;

f.     Award Dorey statutory pre-judgment interest; and

g.     Order all further relief that the Court deems just and proper.

## COUNT III
### DEFAMATION *PER QUOD* – IN THE ALTERNATIVE TO COUNTS I AND II AGAINST DEFENDANTS LARBY AMIROUCHE AND RYAN EAGLE

43.     Dorey realleges and incorporates paragraphs 1 through 42 above as though set forth fully herein.

44.     To the extent the defamatory statements made by Amirouche and/or Eagle are not considered *per se* defamation, Dorey brings this Count III for defamation *per quod* in the alternative to Counts I and II and incorporates the allegations in Counts I and II.

45.     As a direct and proximate result of Amirouche's and/or Eagle's defamatory

statements, Dorey has suffered actual damages in the form of, among other things, loss of business, that are in excess of the $75,000 jurisdictional amount for, exclusive of interest and costs.

46.     Because of the willful and malicious nature of the above-described conduct, the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff Scott Dorey respectfully requests the following relief:

a.      Enter judgment in favor of Dorey on Count III of this Complaint;

b.      Award Dorey all compensatory damages resulting from injuries to his good name, reputation, and business as a result of Amirouche's and Eagle's defamatory statements;

c.      Award Dorey compensatory damages for the humiliation and emotional distress he has suffered and continues to suffer as a result of Amirouche's and Eagle's defamatory statements;

d.      Order that Amirouche and Eagle take all actions necessary to remove any material relating or referring to Scott Dorey that they or anyone acting on their behalf has posted on any internet website;

e.      Award Dorey punitive damages because of the malicious nature in which the defamatory statements were made;

f.      Award Dorey statutory pre-judgment interest; and

g.      Order all further relief that the Court deems just and proper.

## COUNT IV
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030 AGAINST DEFENDANTS LARBY AMIROUCHE AND RYAN EAGLE

47.     Dorey realleges and incorporates paragraphs 1 through 26 above as though set forth fully herein.

48.     Dorey's personal computer and cell phone are used in or affect interstate or foreign commerce or communication.

49.     Defendants intentionally accessed Dorey's business contacts from his computer and/or cell phone and thereby obtained information from a protected computer and/or cell phone

without Dorey's knowledge and consent.

50.     Defendants then composed various emails to those contacts defaming Dorey, as described above.

51.     As a direct and proximate result of Defendants' conduct, Dorey has suffered loss and/or damage in excess of $5,000.

WHEREFORE, Plaintiff Scott Dorey respectfully requests the following relief:

a.      Enter judgment in favor of Dorey on Count IV of this Complaint;

b.      Award Dorey monetary damages in an amount to be proven at trial and in excess of $5,000 resulting from Amirouche's and Eagle's violation of the Computer Fraud and Abuse Act;

c.      Award Dorey statutory pre-judgment and post-judgment interest; and

d.      Award Dorey all other relief that the Court deems just and proper.

## COUNT V
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AGAINST DEFENDANT LARBY AMIROUCHE AND RYAN EAGLE

52.     Dorey realleges and incorporates paragraphs 1 through 51 above as though set forth fully herein.

53.     Amirouche's and Eagle's relentless, year-long campaign to extort money and harm Dorey through the wide-spread dissemination of false and defamatory statements constitutes extreme and outrageous behavior.

54.     Further contributing to the extreme and outrageous nature of their misconduct was the fact that they made repeated attempts to extort Dorey by demanding that he pay them exorbitant sums of money or else face continued online harassment and defamation.

55.     Amirouche and Eagle maliciously intended to inflict severe emotional distress on Dorey or knew that there was a high probability that their conduct would cause Dorey severe emotional distress.

56.     As a direct and proximate result of their actions, Dorey has suffered damages including but not limited to pain and suffering, damage to Darby's reputation, emotional distress, anguish, humiliation, embarrassment, and will continue to suffer same.

WHEREFORE, Plaintiff Scott Dorey respectfully requests the following relief:

a.     Enter judgment in favor of Dorey on Count V of this Complaint;

b.     Award Dorey compensatory and other damages for the injuries which he has suffered as a result of Amirouche's and Eagle's extreme and outrageous conduct;

c.     Award Dorey punitive damages;

d.     Order that Amirouche and Eagle take all actions necessary to remove any material relating or referring to Plaintiff Scott Dorey that they or anyone acting on their behalf has posted on any internet website; and

e.     Award any such other relief as may be determined to be just and proper.

Dated: November 30, 2017                    Respectfully Submitted,

                                            **Scott C. Dorey**


                                            By:  /s/ Timothy A. Hudson
                                                    One of His Attorneys




Timothy A. Hudson (No. 6271244)
Melody L. Gaal (No. 6320640)
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., 7th Floor
Chicago, Illinois 60604
(312) 762-9450
thudson@tdrlawfirm.com
mgaal@tdrlawfirm.com